UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:05CV251-1-MU

| | |
|---|---|
| KENNETH PATTON, )<br>      Plaintiff, )<br>)<br>v. )<br>)<br>THOMAS LANCASTER, et al., )<br>)<br>      Defendants )<br>) | **BRIEF IN SUPPORT OF<br>DEFENDANTS' MOTION FOR<br>SUMMARY JUDGMENT** |

## STATEMENT OF THE CASE

Plaintiff, an inmate in the custody of the North Carolina Department of Correction ("DOC"), filed this §1983 action against Defendants Thomas Lancaster, David Mitchell, Rodney Bennett, Delinda Woody, Patrick Mays, and Jessie Downing on July 25, 2005. Plaintiff alleges that Defendants violated his constitutional rights "through acts of deliberate indifference and negligent conduct, and by inflicting cruel and unusual punishment" upon Plaintiff. Defendants Mitchell and Lancaster were dismissed in the Court's Frivolity Order on July 27, 2005. On September 13, 2005, the case against Defendant Downing was stayed pursuant to the Service Members Relief Act. Defendants Motion for an Enlargement of Time was granted on September 27, 2005. Defendants Woody and Bennett filed an Answer on October 20, 2005. This Court filed an Order on Service was filed for Defendant Mays on April 10, 2006. Defendant Mays was served on May 2, 2006. His Answer was filed on May 23, 2006. The Honorable Graham C. Mullen issued a Scheduling Order on May 23, 2006, requiring all Dispositive Motions filed by July 24, 2006.

## STATEMENT OF THE FACTS

<u>Plaintiff's Complaint</u>

Plaintiff complains that when he was transferred to Mountain View Correctional Institution ("MVCI"), Defendants violated his constitutional rights by confiscating his Milk of Magnesia ("MOM"), and other medications, without determining whether the medications were needed. Plaintiff claims that he became immediately constipated and that Defendants ignored his complaints. Plaintiff alleges that he suffered a ruptured hernia and the loss of his right testicle as a result of Defendants' actions. He further alleges that after his surgery, before his anesthesia wore off, Defendants Bennett, Downing and Mays pepper sprayed him because he was cursing, spitting, and acting aggressively.

<u>Defendants' Evidence</u>

Defendant Bennett is a Correctional Officer, Defendant Mays is former Correctional Officer and Delinda Woody is a former Lead Nurse. All Defendants were employed by the North Carolina Department of Correction, Division of Prisons ("DOP"), at MVCI during the time period Plaintiff alleges in his Complaint. In support of Defendants' Motion for Summary Judgment, Defendants submit this Memorandum of Law, affidavits of Defendants Bennett and Woody, Exhibits A through F, and the affidavit of Philip Stover, MD. These materials show that Plaintiff was transferred to MVCI on April 4, 2003. Plaintiff's Transfer-In Record was reviewed and signed by Defendant Woody. (Woody Aff. ¶5) When Plaintiff transferred to MVCI, his medical record did not contain an order for MOM and his medication bottle labeled "Ibuprofen" contained Ibuprofen and the muscle relaxer, Baclofen. (Woody Aff. ¶7) Records show Plaintiff was, inadvertently, issued a 30-day supply of Baclofen as a self-administered medication in violation of DOC policy. (Woody Aff. ¶8)

2

Consequently he was given new instructions for taking the medication. Defendant Woody does not recall taking MOM away from Plaintiff; however, Plaintiff would not have been allowed to keep the medication without a prescription per DOC policy. (Woody Aff. ¶9) Plaintiff also signed a self-medication agreement which prohibited him from using medication which did not have a proper prescription label and a current order. (Woody Aff. ¶10) On October 1, 2003, Plaintiff requested a prescription for MOM, but he did not complain that he was constipated. The next day, Plaintiff was prescribed the medication with instructions to use it "as needed." (Woody Aff. ¶12)

On May 5, 2004, Plaintiff had a confrontation with correctional officers and was placed in segregation. (Stover Aff. ¶5) Per DOP procedures, Plaintiff's medications were taken and reviewed. This act was not performed by Defendant Woody. (Stover's Aff. ¶¶6, 7) Three of Plaintiff's medications, Prevacid, Ibuprofen, and the multivitamin, (fish oil) were either out of date or Plaintiff possessed the medicine in violation of DOP policy. (Stover Aff. ¶7) Plaintiff had 90 fish oil vitamins when he should have had only 30. He also had two unlabeled containers. The first container had 120 Drixtol tablets. Plaintiff should have had only 60 tablets. A thick white liquid was inside the second unlabeled container. Both containers were confiscated because DOP policy prohibits inmates from possessing medication in unlabeled containers. *(Id.)* If Plaintiff's MOM was confiscated, when he was transferred to the unit or when he was placed in segregation, it was because he did not have a prescription for the medicine or the nursing staff could not identify the substance as required per DOP policy. (Woody Aff. ¶6; Stover Aff. ¶15)

On July 21, 2004, Plaintiff complained of constipation and the nurse practitioner prescribed him MOM "as needed." (Stover Aff. ¶9) Plaintiff was also prescribed the laxatives Colace and Lactulose. The prescriptions required him to take Colace daily and Lactulose weekly. *(Id.)*

3

Plaintiff's medical records show that he failed to keep approximately half of his appointments to take the Lactulose. (Stover Aff. ¶11)

On July 30, 2004, Plaintiff complained of severe abdominal pain and was immediately transferred to the local hospital. (Bennett Aff. ¶5) Plaintiff was diagnosed with having an incarcerated hernia and emergency surgery was performed. As part of the surgery, one of Plaintiff's testicles was removed. (Stover Aff. ¶13)

Plaintiff's allegation that he was constipated because his MOM was confiscated is not supported by his medical records. (Stover Aff. ¶14) Between May 9, 2004, when Plaintiff alleges that his MOM was taken and July 30, 2004, when he began experiencing abdominal pain, Plaintiff had at least 10 encounters with medical personnel. He complained of constipation only once during that period. Moreover, Plaintiff failed to keep his appointments to take all of the medication prescribed for him to alleviate his constipation. (Stover Aff. ¶13)

Plaintiff admits that the effects of the anesthesia made him aggressive. (Complaint) As Plaintiff's anesthesia began to wear off, he cursed Defendants Mays, and Downing as well as medical personnel. At one point, Plaintiff became so disruptive that Defendant Mays had to use OC pepper spray on him. (Bennett Aff. ¶9) Defendant Downing contacted Lieutenant Young at MVCI, and told him of Plaintiff's behavior. The lieutenant ordered Defendant Bennett to go to the hospital and monitor the situation. (Bennett Aff. ¶8) When Defendant Bennett arrived, Plaintiff continued being disruptive and belligerent towards Defendants Mays, Downing and the medical staff. Defendant Bennett observed Plaintiff cursing at Defendants Mays and Downing, attempting to free himself from his mechanical restraints, and spitting on Mays and Downing. Defendants Mays and Downing used the force necessary to get Plaintiff to comply with their directions. (Bennett Aff. ¶12)

**SUMMARY JUDGMENT PRINCIPLES**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©. The movant has "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Rule 56©. Further, "the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Rule 56(e)).

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id* at 249. In opposing summary judgment, nonmovants must do more than present a mere scintilla of evidence in their favor. They must present sufficient evidence that reasonable jurors could find for them by a preponderance of the evidence. An apparent dispute is "genuine" only if "the nonmovant's version is supported by sufficient evidence to permit a reasonable jury to find in the nonmovant's favor." *Sylvia Development Corp. v. Calvert County, Md.*, 48 F.3d 810, 818 (4th Cir. 1995) (internal quotation marks and citation omitted).

**ARGUMENT**

I. **PLAINTIFF FAILS TO STATE A CLAIM AGAINST THE DEFENDANTS BECAUSE HE CANNOT SHOW THAT DEFENDANTS WERE DELIBERATELY INDIFFERENT TO HIS MEDICAL NEEDS AND A CLAIM OF NEGLIGENCE DOES NOT SUSTAIN A SECTION 1983 ACTION.**

In every Section 1983 action, the plaintiff has the burden of proof to show "that the defendant's unconstitutional action was the 'cause in fact' of the plaintiff's injury." *Butler v. Dowd*, 979 F.2d 661, 670 (8th Cir.), *cert. denied*, 508 U.S. 930 (1992). Plaintiff complains that he suffered severe constipation because Defendant Woody wrongfully took his MOM away from him; thus, causing him to develop an incarcerated hernia and the loss of a testicle. According to Plaintiff, Defendants knew of his problems with constipation and failed to provide him appropriate medical care. However, reasonable jurors could not find that Defendants' actions either caused or aggravated Plaintiff's hernia.

Regardless of whether recovery is sought on the theory of aggravation of an existing serious condition or of exposure to a risk of future harm, the prisoner must show officials acted with deliberate indifference. In determining whether officials are deliberately indifferent to a prisoner's serious medical needs, courts may generally rely on medical records of examination and treatment of the prisoner. *Stanley v. Hejirika*, 134 F. 3d 629, 637-38 (4th Cir. 1998); *Marshall v. Odom*, 156 F. Supp. 2d 525, 530 (D. Md. 2001); *Bennett v. Reed*, 534 F. Supp. 83, 86 (E.D.N.C. 1981), *aff'd*, 676 F.2d 690 (4th Cir. 1982). A hearing is unnecessary if "prison and medical records made in the ordinary course of operations are sufficient to refute the inmate's claims." *Ross v. Bounds*, 373 F. Supp. 450, 452 (E.D.N.C. 1974).

Defendants' evidence shows that when Plaintiff was transferred to MVCI his medicine was inventoried by Defendant Woody and that Plaintiff possessed medication in violation of DOC policies.(Exhibits A-E, Woody Aff.¶¶ 6,9; Stover Aff. ¶7) Defendant Woody does not recall confiscating Plaintiff's MOM; however his possession of MOM without a prescription would have been in violation of DOP policy.(Woody Aff. ¶8) Plaintiff signed a self-medication agreement

6

which states that, "inmates are not allowed medications without proper labels." (Stover Aff. ¶15) Plaintiff also had a container labeled "Ibuprophen." However, the muscle relaxer Baclofen was mixed with the Ibuprophen. Furthermore, the prescription for Baclofen mistakenly instructed Plaintiff to self-administer the medication when it should have been prescribed for direct observation administration. (Woody Aff. ¶7, Exhibit C) Therefore, the medicine was retrieved and Plaintiff was issued a new prescription requiring Plaintiff to take the Baclofen according to DOP policy.

Defendants' evidence also shows that during the period of time that Plaintiff accuses Defendant Woody of confiscating his MOM, he saw the prison's medical staff at least ten times. He only complained of constipation once during those appointments. Plaintiff was prescribed MOM "as needed." Between May 5, 2004 and July 1, 2004, he was also prescribed the medicines Colace and Lactulose manage his constipation. According to Plaintiff's prescription he was to take Colace daily and the Lactuose weekly. (Stover Aff. ¶10) Plaintiff failed to follow his prescription for Lactuose since he only appeared to take half of the doses of the medicine. Defendants were not the cause of Plaintiff's constipation problem. It was Plaintiff's failure to take all of the medicine as prescribed. Had Plaintiff done so, his constipation problem could have been managed. (Stover Aff. ¶17)

Assuming Plaintiff could somehow show his incarcerated hernia was caused or aggravated by the actions of Defendants, their conduct could not amount to more than negligence, which is not sufficient to sustain a Section 1983 action. To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an excessive risk to an inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). "The official must both be aware of facts from which the inference

7

could be drawn that a substantial risk of serious harm exists and he must also draw the inference." 511 U.S. at 837. "But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an excessive risk to a inmate's health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). "The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." 511 U.S. at 837. "But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* Applicable Eighth Amendment principles have been summarized as follows:

> The Eighth Amendment prohibits the infliction of "cruel and unusual punishments" [and] protects inmates from inhumane treatment and conditions while imprisoned. Determination of whether the Eighth Amendment has been violated requires analysis of subjective and objective components. Specifically, Eighth Amendment analysis necessitates inquiry as to whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the . . . injury inflicted on the inmate was sufficiently serious (objective component). . . .
>
> . . . [W]hen an inmate claims that prison officials failed to provide him with adequate medical care . . . he must demonstrate that prison officials acted with "deliberate indifference" in order to state an Eighth Amendment claim. . . . [T]he subjective component requires proof of more than negligence but less than malice.
>
> . . . Since routine discomfort is part of prison life and society does not expect that prisoners will have unqualified access to health care, in order to demonstrate the objective component of conditions-of-confinement or medical care claims prisoners must demonstrate extreme deprivations or neglect of serious medical needs.

*Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996) (citations omitted). To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an excessive risk to an inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998).

## II. DEFENDANTS BENNETT'S AND MAY'S ACTIONS DO NOT CONSTITUTE CRUEL AND UNUSUAL PUNISHMENT

A plaintiff asserting a Cruel and Unusual Punishments Clause claim must show "wantonness in the infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 322 (1986); *accord Taylor v. McDuffie*, 155 F.3d 479, 483 (4th Cir. 1998). "[W]hether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S. at 320-21. Absent malice and sadism on the defendant's part, the plaintiff's claim must fail.

> Factors relevant to the determination of wantonness include [1] the need for application of force, [2] the relationship between that need and the amount of force used, [3] the threat reasonably perceived by the responsible officials, and [4] any efforts made to temper the severity of a forceful response. [A]bsence of a serious injury is a relevant, but not dispositive, additional factor to be considered in the subjective analysis.

*Williams v. Benjamin*, 77 F.3d 756, 762 (4th Cir. 1996) (internal quotation marks and citation omitted.) As to the first factor, resistance--even passive resistance--will undermine an inmate's claim by establishing the need for force. *Pressly v. Gregory*, 831 F.3d 514, 517-18 (4th Cir. 1987). Under North Carolina law, a correctional officer has a duty to use any means necessary to defend himself or enforce the observance of discipline when a prisoner offers violence to an officer or resists or disobeys a lawful command. N.C. Gen. Stat. § 148-46 (1999).

In this case, the uncontroverted evidence shows that as Plaintiff's anesthesia begin to wear off he became anger, and violent towards Defendants Downing, Mays and medical staff. Defendant Bennet was sent to the hospital to oversee the situation. When Defendant Bennett arrived, Plaintiff's behavior had not changed. Plaintiff was attempting to get out of his mechanical restraints and he spit on Defendants Downing and Mays. The actions of Defendant Downing and Mays were justified.

### III. QUALIFIED IMMUNITY SHIELDS DEFENDANTS FROM CLAIMS FOR MONETARY DAMAGES.

When analyzing the issue of qualified immunity, the court must "identify the specific right that the plaintiff asserts was infringed by the challenged conduct, recognizing that the right must be defined at the appropriate level of particularity." *Winfield v. Bass*, 106 F.3d 525, 530 (4th Cir. 1997). Defining the applicable right in an abstract way "is inappropriate." *Id.* at 531. If there is any legitimate question as to whether an officer's conduct amounts to an abridgement of a constitutional right, the officer is entitled to qualified immunity. *Wiley v. Doory*, 14 F.3d 993, 995 (4th Cir. 1994). The United States Supreme Court summarized qualified immunity principles as follows:

> In a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence. Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceeding so that the costs and expenses of trial are avoided where the defense is dispositive. Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation. The privilege is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. As a result, we have repeatedly stressed the importance of resolving immunity questions at the earliest stage in litigation.

10

> A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry. In the course of determining whether a constitutional right was violated on the premises alleged, a court might find it necessary to set forth principles which will become the basis for a holding that a right is clearly established. This is the process for the law's elaboration from case to case, and it is one reason for our insisting upon turning to the existence or nonexistence of a constitutional right as the first inquiry. The law might be deprived of this explanation were a court simply to skip ahead to the question of whether the law clearly established that the officer's conduct was unlawful in the circumstances of the case.
>
> If no constitutional right would have been violated on the allegations established, there is no necessity for further inquiries concerning qualified immunity.

*Saucier v. Katz*, 533 U.S. 194, 200-201 (2001) (internal quotation marks and citations omitted); *accord Clem v. Corbeau*, 284 F.3d 543, 549 (4th Cir. 2002). Prison officials "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A prison official sued for a constitutional violation does not lose qualified immunity merely because the conduct at issue might have violated some prison administrative regulation. *Davis v. Scherer*, 468 U.S. 183, 194 (1984). Because the facts do not show Defendants' conduct violated a constitutional right, qualified immunity shields them from Plaintiff's claim for damages.

## CONCLUSION

This Court should apply the foregoing legal authorities and grant Defendants' motion.

Respectfully submitted this the 24th day of July, 2006.

        ROY COOPER
        Attorney General


        /s/Lisa H. Graham
        Lisa H. Graham
        Assistant Attorney General
        Attorney for Defendants
        N.C. State Bar No. 13899
        N.C. Department of Justice
        P.O. Box 629
        Raleigh, North Carolina 27602-0629
        Telephone:    (919) 716-6500
        Fax:    (919) 716-6761
        E-mail:    lgraham@ncdoj.com
        LR 83.1 Counsel

## **CERTIFICATE OF SERVICE**

I hereby certify that on 24 July 2006, I electronically filed the foregoing **Brief in Support of Defendants' Motion for Summary Judgment** with the Clerk of the Court using the CM/ECF system, and I hereby certify that I have on 24 July 2006, mailed said documents to the following non-CM/ECF participant:

>Kenneth Patton
>DOC No. 0315418
>Scotland Correctional Institution
>22385 McGirt's Bridge Road
>Laurinburg, NC 28352

This the 24th day of July, 2006.

>/s/ Lisa H. Graham
>Lisa H. Graham
>Assistant Attorney General