IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:05CV251-1-MU

KENNETH PATTON,  )
                 )
    Plaintiff,   )
                 )
    v.           )           **O R D E R**
                 )
THOMAS LANCASTER, et al., )
                 )
    Defendants.  )
_____)

**THIS MATTER** comes before the Court upon Defendants' Motion for Summary Judgment (Doc. No. 28), filed July 24, 2006, Plaintiff's Motion for Discovery (Doc. No. 29), filed July 21, 2006; Defendants' Motion for Protective Order (Doc. No. 33), filed December 3, 2007; Plaintiff's Motion to Amend Discovery (Doc. No. 36), filed August 11, 2006; Plaintiff's Motion to Compel (Doc. No. 38), filed August 31, 2006; and Plaintiff's Motion to Compel (Doc. No. 44), filed March 29, 2007.

For the reasons provided herein, Defendants' Motion for Summary Judgment is granted, Plaintiff's Discovery motions are denied, and Plaintiff's Complaint is dismissed.

**COMPLAINT**

In his Complaint Plaintiff alleges that soon after he was transferred to Mountain View Correctional on April 4, 2003, Defendant Woody, a nurse, came to his cell "and confiscated [his]

Milk of Magnesia, various other creams and ointments . . . ." (Compl. pp. 3, 7.)[1] Plaintiff asserts that Defendant Woody took this action without first determining whether Plaintiff had a medical need for these medications. (Compl. p. 4.) Plaintiff asserts that he had a prescription for the Milk of Magnesia and that he immediately became constipated after it was confiscated. (Compl. p. 4.) Plaintiff further asserts that he attempted on several occasions to get his Milk of Magnesia returned to him but the issue was evaded by Defendant Woody and the staff. (Compl. pp. 4, 7.) Plaintiff states that he soon became severely constipated and on July 30, 2004, he was taken to the hospital where he underwent emergency surgery for a hernia rupture and had his right testicle removed. (Compl. p. 8.) Plaintiff alleges that it was Defendant Woody's deliberate indifference in confiscating his medications which led to the emergency surgery on July 30, 2004. (Compl. p. 8.)

Plaintiff also alleges a claim of excessive force. More specifically, Plaintiff alleges that he was maced by Defendants Bennett and Mays, both correctional officers, when he woke up from surgery while handcuffed to the bed. (Compl. pp. 9-10.)

## ANALYSIS

### A. Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Anderson v.

---

[1] The Court's references to page numbers in Plaintiff's Complaint correspond to the page numbers generated by the Court's electronic filing system.

Liberty Lobby, 477 U.S. 242, 106 (1986); Celotex Corp. v. Catrett, 477 U. S. 317 (1986). A genuine issue exists only if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248.

In opposing a summary judgment motion, the "non-moving party must do more than present a mere "scintilla" of evidence in his favor. Rather, the non-moving party must present sufficient evidence such that "reasonable jurors could find by a preponderance of the evidence for the non-movant." Sylvia Dev. Corp. v. Calvert County Md., 48 F.3d 810, 818 (4th Cir. 1995)(quoting Anderson, 477 U.S. at 249-50). An apparent dispute is "genuine" only if the non-movant's version is supported by sufficient evidence to permit a reasonable jury to find in its favor. Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment must be granted." Anderson, 477 U.S. at 249.

**B. Deliberate Indifference Claim**

To establish an Eighth Amendment violation based on inadequate medical care, an inmate must show that defendants acted with "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976). Deliberate indifference is demonstrated by either an actual intent to cause harm, or reckless disregard of substantial risk of harm that is either known to the defendant or would be apparent to a reasonable person in defendant's position. See Miltier v. Beorn, 896 F.2d 848, 851-52 (4th Cir. 1990). In either case, however, the indifference must be substantial: inadequate treatment due to negligence, inadvertence, or differences in judgment between an inmate and medical personnel does not rise to the level of a constitutional violation. See Daniels v. Williams, 474 U.S. 327 (1986).

Plaintiff alleges that shortly after he was transferred to Mountainview Correctional

Facility, on April 4, 2003, Defendant Woody, a nurse, confiscated his Milk of Magnesia and various other medications. (Compl. pp. 3, 7.) Plaintiff asserts that Defendant Woody failed to medically verify his need for the Milk of Magnesia. (Compl. p. 3.) Plaintiff alleges that he immediately became constipated but that all of his attempts to address the issue were evaded by Defendant Woody. (Compl. pp. 4-7.) Plaintiff contends that as a result of his Milk of Magnesia being confiscated in April 2003, he ruptured a hernia and required emergency surgery on July 30, 2004, to have his right testicle removed. (Compl. p. 8.)

The contemporaneous medical records simply do not support Plaintiff's broad allegations of deliberate indifference. See Stanley v. Hejirika, 134 F.3d 629, 637-38 (4th Cir. 1998)(in ruling on claims of deliberate indifference to a serious medical need, courts may rely on medical records of examination and treatment of prisoner); Marshall v. Odom, 156 F. Supp. 2d 525, 530 (D. Md. 2001)(same); Bennett v. Reed, 534 F. Supp. 83, 86 (E.D.N.C. 1981)(same), aff'd, 676 F.2d 690 (4th Cir. 1982).

Plaintiff does not produce and this Court cannot find in the medical records provided to this Court, any indication that Dr. Charles Stewart prescribed Milk of Magnesia for Plaintiff.[2] As such, there is no evidence in the record that Plaintiff had a prescription for this medicine when it was confiscated after his transfer. As such, it was entirely reasonable for Defendant Woody to confiscate the medicine.

---

[2] Plaintiff continues to assert in his response to the Motion for Summary Judgment that Dr. Stewart prescribed him Metamucil. He states that this Court should have asked for the prescriptions of Dr. Stewart prior to his arrival at Mountainview Correctional Institution. This Court ordered the superintendent to produce all prescriptions written by Dr. Stewart for Plaintiff. No date limitation was placed by the Court upon this order. Significantly, Plaintiff did not inform Defendant Woody that he was taking this medication when he transferred to Mountainview. (Resp. Mot. Summ. J. Ex. A.)

Moreover, the record clearly indicates that after his medications were confiscated in April 2003, Plaintiff filed his first sick call request on April 8, 2003. (Resp. Mot. Summ. J. Bates No. 31). In his sick call request Plaintiff asked why his medications were taken – he did not complain of constipation. (Resp. Mot. Summ. J. Bates No. 31). On April 10, 2003, the medical records indicate that Plaintiff filed another sick call request and that when he was seen by medical staff on April 14, 2003, he was given a dose of Milk of Magnesia and told to return the next morning for another dose if needed. (Resp. Mot. Summ. J. Bates No. 30). On April 17, 2003, Milk of Magnesia was ordered for one month for Plaintiff. (Resp. Mot. Summ. J. Bates No. 415. ) On April 24, 2003, Milk of Magnesia was ordered for three months for Plaintiff. (Resp. Mot. Summ. J. Bates No. 414 .) At a sick visit on June 26, 2003, Plaintiff requested and received Metamucil to relieve constipation. (Resp. Mot. Summ. J. Bates No. 24). Other than that instance, which was treated, Plaintiff did not complain of constipation from May 2003, until June 2004. (Resp. Mot. Summ. J. Bates Nos. 5-28.)

As set forth above, the facts as established by the contemporaneous medical records simply do not support a finding that Defendant Woody was deliberately indifferent to Plaintiff's serious medical need. Indeed, Plaintiff submitted twenty-seven sick call requests between April 8, 2003, and July 28, 2004. (Resp. Mot. Summ. J. Bates Nos. 3-31.) On only four occasions did Plaintiff even mention that he needed Milk of Magnesia or that he was constipated. (Resp. Mot. Summ. J. Bates Nos.3, 16, 29, 30.) On only one of these four sick call requests was even within a year of his ruptured hernia and this request gave no indication of any type of emergency (Resp. Mot. Summ. J. Bates No 5.) Indeed, in his last sick call appointment request Plaintiff complained that his pumice stone and exercise ball had been taken. (Resp. Mot. Summ. J. Bates

5

No. 3.)

In addition, to finding that Plaintiff has failed to establish that Defendant Woody was deliberately indifferent, this Court finds that Plaintiff has simply failed to establish a causal connection between the confiscation by Defendant Woody of his Milk of Magnesia in April 2003,[3] and his ruptured hernia in late July 2004. In his response to the Motion for summary Judgment Plaintiff references an "initial rupture" that allegedly occurred in April 2003. This Court finds no evidence in the record to support a conclusion that Plaintiff initially ruptured his belly button in April 2003 which then lead to the emergency surgery on July 30, 2004.. Consequently, Plaintiff's deliberate indifference to a serious medical need claim fails on this basis as well. See Butler v. Dowd, 979 F.2d 661, 670 (8th Cir. 1992)(Plaintiff has the burden of proof to show "that the defendant's unconstitutional action was the 'cause in fact' of the plaintiff's injuries.")

## C. Excessive Force Claim

It is undisputed that Plaintiff was maced shortly after he exited surgery while he was restrained to his hospital bed. Nor is it disputed that Plaintiff was acting in an aggressive manner at the time he was maced.

"After incarceration, only the unnecessary and wanton infliction of pain constitutes . . . cruel and unusual punishment forbidden by the Eighth Amendment." Whitley v. Albers, 475 U.S. 312, 319 (1986). "[W]henever prison officials stand accused of using excessive force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in

---

[3] The Court notes that Defendants also address another confiscation incident in May 2004. A review of Plaintiff's Complaint however does not reveal any mention of such an incident. As such, this Court concludes that the incident is not a basis of Plaintiff's Complaint.

Whitley: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." That is, a court must consider whether the correctional officers actions, taken contextually, were objectively harmful enough to offend contemporary standards of decency. See Hudson v. McMillan, 503 U.S. 1, 6 (1993). In evaluating an Eighth Amendment claim, a court must consider whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm. Id.

Contemporaneous hospital records indicate that after surgery Plaintiff was cussing, spitting, and thrashing around. (Resp. Mot. Summ. J. Bates No. 490.) These medical records indicate that although Plaintiff was given two injections of Phenegran in response to his actions, his combative behavior escalated. (Resp. Mot. Summ. J. Bates No. 490.) The nurse then administered morphine but Plaintiff continued to scream, cuss, and thrash around. (Resp. Mot. Summ. J. Bates No. 490.) The doctor was then called and Plaintiff was given two injections of Ativan. (Resp. Mot. Summ. J. Bates No. 490.) The nurse then noted that Plaintiff became more cooperative. (Resp. Mot. Summ. J. Bates No. 490.) However, when Plaintiff was being readied to be transferred to the second floor, he again became "very combative, biting and spitting at guards and hospital staff. Fighting as hard as he can." (Resp. Mot. Summ. J. Bates No. 490.) Plaintiff was then maced and immediately thereafter the nurse sedated him. (Resp. Mot. Summ. J. Bates No. 490.) That same day, Plaintiff was transferred to another medical facility because he was considered a security threat. (Resp. Mot. Summ. J. Bates No. 469.)

The medical records indicate that an extensive attempt was given to medically control Plaintiff's behavior with drugs. It was only when these medical steps did not prove effective,

7

that mace was used. While it is possible that another response to Plaintiff's extremely combative behavior may have been preferable, this Court also finds that Plaintiff does not establish that the Defendants acted maliciously and sadistically to cause harm. That is, Plaintiff points to no facts to support a conclusion that the Defendants macing of him was anything other than, an attempt to control his extremely combative behavior. Consequently, Plaintiff has failed to establish the subjective requirement necessary to prevail on an excessive force claim.[4]

## D. Discovery Motions

Upon reviewing Plaintiff's voluminous discovery requests and the record presently before this Court, this Court concludes that it not necessary to a resolution to this case to grant Plaintiff's discovery requests. That is, the record as it exists is sufficient to conclude that Plaintiff's constitutional rights were not violated.

**IT IS, THEREFORE, ORDERED that:**

1. Defendants' Motion for Summary Judgment is **GRANTED**;

2. Plaintiff's Motion for Discovery (Doc. No. 29) is **DENIED**;

3. Defendants' Motion for Protective Order (Doc. No. 33) is **DENIED as moot**;

4. Plaintiff's Motion to Amend Discovery (Doc. No. 36) is **DENIED**;

5. Plaintiff's Motion to Compel (Doc. No. 38) is **DENIED**,

6. Plaintiff's Motion to Compel (Doc. No. 44) is **DENIED**; and

---

[4] Pursuant to 50 U.S.C. § 525(a) the case against Defendant Downing was stayed on September 14, 2005. (Doc. No. 13). Because the Court's analysis is equally applicable to the claim against Defendant Downing and no additional information or analysis is necessary, the case against Defendant Downing is also dismissed.

7. Plaintiff's Complaint is **DISMISSED.**

Signed: May 6, 2008

Graham C. Mullen
United States District Judge